**CENTURY GEOPHYSICAL CORP., a corporation, Plaintiff and Appellee,**

v.

**CALIFORNIA BOARD OF EQUALIZATION et al., Defendants and Appellants.**

No. 75–2257.

United States Court of Appeals, Ninth Circuit.

Nov. 11, 1977.

Dissenting Opinion Nov. 25, 1977.

Rehearing Denied Dec. 9, 1977.

---

Charles C. Kobayashi, Deputy Atty. Gen. (argued), Sacramento, Cal., for defendants and appellants.

Lance Stockwell (argued), of Boesche, McDermott & Eskridge, Tulsa, Okl., for plaintiff and appellee.

Before KILKENNY and ANDERSON, Circuit Judges, and CRAIG, District Judge *.

* The Honorable Walter E. Craig, Chief Judge, District of Arizona, sitting by designation.

CRAIG, District Judge.

The California Board of Equalization appeals from an order of the District Court enjoining the Board from interfering with Century Geophysical's (Century's) rights under a sales agreement with C. A. Systems, Inc. (Systems). We affirm.

The underlying dispute concerns the Board's attempts to collect certain taxes allegedly owing from Century Automation, Inc. (Automation), a company once a wholly-owned subsidiary of Century.

While the parties have raised several issues on this appeal this opinion will be confined to that issue found to have been dispositive.

The relevant facts may be stated briefly. Century entered into an agreement to sell all the assets of Automation to Systems. According to that agreement Century retained a security interest in the transferred assets.

Systems soon defaulted on its obligations under the agreement. Century moved to take possession of its collateral and further took steps which effectively dissolved Automation as a going concern.

Century subsequently filed a Chapter XI Bankruptcy petition in the Northern District of Oklahoma. The Board filed a claim for $8,648.19 in those proceedings, the amount it claimed was owed by Automation for sales and use taxes. The Bankruptcy Court disallowed the claim. No appeal was taken from that order.

As part of the final discharge in bankruptcy, the Court included an injunction against anyone pursuing claims against Century or its assets, save only certain claims not at issue here.

It is argued that the district court's finding of the Board in contempt should be reversed and the injunction limited so as to permit the Board to proceed against Systems under the successor liability statute. However, the issue that would allow the Board to so proceed has been decided by the earlier bankruptcy proceedings. Whether

correctly or incorrectly decided, the determination of the Bankruptcy Court precludes the Board from attaching successor liability to Systems and, therefore, the injunction and contempt citation should stand as issued.

Consider first, the language of the statute. Section 6811 of the California Revenue and Tax Code provides:

"If any person liable for any amount under this part sells out his business or stock of goods or quits the business, his successors or assigns shall withhold sufficient of the purchase price to cover such amount until the former owner produces a receipt from the board showing that it has been paid or a certificate stating that no amount is due."

Section 6812 of the California Revenue and Tax Code provides in pertinent part:

"If the purchaser of a business or stock of goods fails to withhold purchase price as required, he becomes personally liable for the payment of the amount required to be withheld by him to the extent of the purchase price, valued in money . . . ."

While Section 6812 attaches personal liability to the purchaser of the business, before such a liability may attach, Section 6811 requires a two-step determination be made. First, the seller must be identified and, second, it must be decided whether that seller has a tax liability.

*Knudsen Dairy Products Co. v. State Board of Equalization,* 12 Cal.App.3d 47, 90 Cal.Rptr. 533 (1970), assists in identifying the seller.[1]

In the case before us, Century is obviously the seller. Century sold Automation's assets, the assets of a wholly-owned corporation, and received the entire purchase price.

This presents the second issue—whether Century had a tax liability. However, this issue has already been decided in the bankruptcy proceedings. When the Board filed the claim against Century for the tax due from Automation, the bankruptcy referee disallowed the claim in its entirety on the grounds that it described a debt which was *not a debt of the bankrupt.* The validity of the Bankruptcy Court's determination cannot be of any consequence to this Court. The Board should have appealed the decision there and, not having done so, is barred from asserting its invalidity now.

It was the Board's activities in pursuing its claim that led to the District Court's order finding the Board in violation of the Oklahoma injunction.

The facts, as this Court must find them, show that Systems acquired assets from a seller who had no tax liability and, as such, Systems may not be pursued under the successor liability statute.

We hold that the Board had its bite at the apple in the Oklahoma Bankruptcy Court. The Board's failure to appeal from the order disallowing its claim ended the matter. The District Court correctly found the Board in violation of the Oklahoma injunction in attempting to pursue its claim against Century's assets.

The judgment is AFFIRMED.

---

1. In the *Knudsen* case, Pix, a super-market chain, had made purchases from Creamery, a distributor of dairy products, and had become substantially indebted to Creamery. Pix's operations began to slip to the point where Pix could no longer remain current in its obligations to creditors. In order to assure a market for its dairy products, Creamery purchased Pix's outstanding stock and made considerable loans to Pix. Pix's operations continued to deteriorate and eventually an agreement was entered into between Pix and Creamery whereby Pix would make cash payments to all its liquidated creditors, except Creamery. After the cash payment, and pursuant to the agreement, Pix transferred all its operating assets to Dairy, a wholly-owned subsidiary of Creamery. Dairy then issued to Creamery a promissory note equivalent to the value of the assets which it received. Creamery then credited Pix, in reduction of its indebtedness, in the amount of the value of the assets transferred. The suit arose when Dairy was held liable under the successor liability statute for Pix's tax indebtedness. Although Dairy's liability was upheld, it is instructive to note that Pix was considered the "seller" of its own assets. 90 Cal.Rptr. at 538. Notwithstanding the stock purchase, the Pix-Creamery relationship was that of a debtor-creditor. In addition, Pix received the consideration from the transaction, in the form of a debt reduction.

J. BLAINE ANDERSON, Circuit Judge, dissenting:

I respectfully dissent. In order to fully set forth the basis of my dissent, it is necessary to further detail the factual background of this case.

Century is an Oklahoma corporation, which had a wholly-owned California subsidiary named Century Automation, Inc. (Automation). In July, 1970, all the assets of Automation were sold to C. A. Systems, Inc. (Systems), a California corporation. The purchase price was to be paid in installments, but Systems defaulted almost immediately due to disputes over the terms of the agreement. This sales agreement provided that:

"15. . . . If Century Automation, Inc. is dissolved by Century Geophysical Corporation, the covenants and agreements of the Century companies and the rights and interests of the Century companies will be and become those of Century Geophysical Corporation." [1]

Century abandoned Automation as a going concern and wrote off its investment in Automation on its books, but Automation was not formally dissolved according to California law.

On April 19, 1971, Century filed a Chapter XI bankruptcy petition in the Northern District of Oklahoma. The Board filed a claim for $8,648.19 in the bankruptcy proceedings. In connection with this claim, the Board sent a letter to the referee explaining that since its information was "incomplete as to the intercompany relationship between the debtor and its subsidiary, Century Automation, Incorporated" and "[s]ince Century Automation is no longer in business because of the sale of its business to C. A. Systems, Incorporated," the Board's claim was filed "on the assumption that payment of the amounts due from C. A. Systems, Incorporated is being made to Century Geophysical Corporation and, as such, our claim would be paid." The bankruptcy referee disallowed the claim in its entirety on the grounds that it described a debt which was not a debt of the bankrupt.

No appeal was taken from the order disallowing the claim.

Century was given a final discharge in bankruptcy on January 17, 1973, and the discharge included an injunction against anyone:

"pursuing or attempting to pursue or commence any suits or proceedings at law in equity or otherwise against said Century Geophysical Corporation or against its property or assets, except with respect to claims, rights or interest arising out of said arrangements or the orders of this court excepting such claims as under Section 317 [sic] of the Bankruptcy Act are not discharged."

On August 11, 1972, prior to the disallowance of its claim in the bankruptcy proceeding, the Board first notified Systems that Systems was liable for the taxes as a successor corporation under California law and demanded payment. The demand was not met.

On April 19, 1973, the Board served a Notice to Withhold upon Systems. This Notice to Withhold advised Systems that the named party, Numerical Control Corp., (the former name of Automation) was delinquent in the payment of its sales and use tax. It further notified Systems that Systems should not dispose of any assets of or pay any debt to the named party without the prior consent of the Board. Under § 6702 of the California Revenue and Taxation Code, if Systems thereafter gave over any property or paid any debt owed to the delinquent party, then Systems would become liable for the debt. This Notice to Withhold was served upon Systems while Century and Systems were negotiating the return of Automation's assets to Century or the price to be paid for those assets. Systems refused to return the assets after receipt of the Notice to Withhold.

On July 12, 1973, Century filed this suit in the district court, claiming that its discharge in bankruptcy prevented the Board from proceeding against its assets in the hands of Systems, and asking the court for

---

1. The Century companies were defined as Century and Automation.

an injunction against the Board. On August 16, 1973, Century and the Board entered into a stipulation which provided for Century to post bond in the amount of $9,390.15. Upon posting of the bond, the Board was to release its Notice to Withhold against Systems and not to interfere, directly or indirectly, with Century's recovery of its collateral.

On August 20, 1973, after the stipulation had been entered into, but before the bond had been posted, Century and Systems executed an accord and satisfaction providing that Systems would pay Century $25,000.00 in two equal installments in satisfaction of the original sales agreement, provided that Century obtained a release from the Board of Systems' liability for Automation's taxes. The accord and satisfaction was a handwritten document drawn by the presidents of the two companies involved. The first installment of $12,500.00 was paid September 1, 1973. Systems refused to make the second payment because the Board continued to assert that Systems was liable as a successor. On August 7, 1974, Systems paid the second installment of $12,500.00 to Century, and received in return Century's agreement to hold Systems harmless for all claims asserted by the Board with respect to Automation's taxes. Century gave Systems a surety bond guaranteeing performance of this indemnification.

This case proceeded to trial without a jury on August 20, 1974. The court allowed Century to amend its complaint to conform to the evidence by alleging the existence of the August 7, 1974, indemnification agreement entered into by Century and Systems. On March 17, 1975, the court issued its findings and conclusions and granted the requested injunction. The pivotal language of the court's order is the court's decree that the defendants "should be and hereby are enjoined and restrained from impeding plaintiff, directly or indirectly, from enforcing and realizing its rights under the sales

agreement of July 1, 1970, between plaintiff and Systems *or any modification* thereof." (emphasis added)

On June 26, 1975, the Board served a Notice to Appear on Systems regarding its liability for taxes as Automation's successor (R. Vol. IA at 257). Century then brought a motion for contempt in the district court, claiming the previous injunction prohibited any further proceedings against Systems. The Board defended on the grounds that the injunction did not extend to Systems because Systems was not a party to the litigation and because the court had not purported to decide that Systems was not liable for the tax as a successor corporation under California law. The court found the Board in contempt, but did not impose a fine because the Board acted from misunderstanding rather than from an intent to disobey.

The majority holds that, based on the above facts, the Board has already had its bite at the apple in the bankruptcy proceedings and its further action in pursuing its claim against Century's assets was in violation of the bankruptcy injunction. I believe that this holding misconstrues the nature and source of Century's and Systems' alleged liabilities.

The error committed by the district court and accepted here by the majority is their failure to distinguish between the two methods of collection utilized by the Board, the theory of successor liability and the Notice to Withhold. A proper resolution of this case requires an explanation and understanding of each of the two methods and an analysis of how each was applied in this case to determine their effect upon the prior bankruptcy injunction.

## SUCCESSOR LIABILITY

Under § 6811[2] and § 6812[3] of the California Revenue and Tax Code, the successor

---

**2.** § 6811 provides:

"If any person liable for any amount under this part sells out his business or stock of goods or quits the business, his successors or assigns shall withhold sufficient of the purchase price to cover such amount until the former owner produces a receipt from the board showing that it has been paid or a certificate stating that no amount is due."

**3.** § 6812 states in pertinent part:

"If the purchaser of a business or stock of goods fails to withhold purchase price as

or assignee of a business is required to set aside a portion of the purchase price sufficient to cover its predecessor's liability for tax unless the successor receives a certificate from the Board that no tax is due. It is only upon the successor's failure to withhold the purchase price in this fashion that the successor becomes personally liable for the tax. This scheme has been interpreted by the California courts to mean that the purchaser must deal with the purchase price "in such a manner as to deny to the seller the benefit of the purchase consideration and to thereby make a portion of it available for the satisfaction of the tax liability." *Knudsen Dairy Products Co. v. State Board of Equalization*, 12 Cal.App.3d 47, 90 Cal. Rptr. 533 (1970). *See also, People v. Buckles*, 57 Cal.App.2d 76, 134 P.2d 8 (1943). Thus it is clear that the liability under this theory arises by virtue of an entity's status as a purchaser and that entity's failure to perform the required act of withholding a sufficient portion of the purchase price.

## NOTICE TO WITHHOLD

The Board, in attempting to collect delinquent taxes, may also utilize the Notice to Withhold, authorized under § 6702[4] of the California Revenue and Tax Code.[5] Under this method the Board may issue such notice to any person who is holding property of or owes a debt to the delinquent taxpayer. Under the statute, the recipient of such notice is told that if he disburses the property held or pays the debt owed to the delinquent taxpayer, then the recipient be-

comes liable for the taxes. Under this method, the original source of liability for the tax debt remains with the delinquent taxpayer and the notice recipient's liability only arises upon its affirmative act of disbursing property or money held by the recipient to the delinquent taxpayer.

## APPLICATION TO THIS CASE

The confusion in this case arose by virtue of the fact that the Board issued its Notice to Withhold upon Systems who was also subject to independent liability under the successor theory. Under the Notice to Withhold, Century enters the picture by virtue of the July 1, 1970, sales agreement. Under that agreement Century was given a security interest in all assets purchased by Systems as security for payment of the purchase price. It is these assets that were held by Systems and which the Board was attempting to withhold. Since Century had a security interest in these assets, the Board's attempt to withhold these assets in order to satisfy the tax debt was clearly in an attempt by the Board to pursue assets held by Century to satisfy the same claim that was submitted to and disallowed by the bankruptcy court. Century's interest in these assets arose prior to the bankruptcy proceeding, and the bankruptcy court's subsequent disallowance of the Board's claim prevented these pre-bankruptcy assets from being attacked by the Board. The district court was therefore correct in issuing its injunction against the Board, preventing the Board from attempting to collect its

required, he becomes personally liable for the payment of the amount required to be withheld by him to the extent of the purchase price, valued in money. . . ."

**4.** § 6702 states in pertinent part:

"If any person is delinquent in the payment of the amount required to be paid by him or in the event a determination has been made against him which remains unpaid, the board may, . . . give notice thereof personally or by registered mail to all persons, . . . having in their possession or under their control any credits or other personal property belonging to the delinquent, or person against whom a determination has been made which remains unpaid, or owing any

debts to the delinquent or such person. . . . After receiving the notice the persons so notified shall neither transfer nor make any other disposition of the credits, other personal property, or debts in their possession or under their control . . . . ."

**5.** As provided for in § 6827 of the California Revenue and Tax Code:

"The remedies of the State provided for in this chapter are cumulative, and no action taken by the Board or Attorney General constitutes an election by the State to pursue any remedy to the exclusion of any other remedy for which provision is made in this part."

claim under the Notice to Withhold. Had the trial court limited its injunction to the Notice to Withhold, I would have no disagreement; however, the court went on and extended its order to prevent the Board from attempting to pursue Systems under the successor liability theory.

Under the successor theory Systems' independent liability arose as soon as it failed to withhold a sufficient portion of the purchase price in order to satisfy the taxes owed. The liability arose by virtue of Systems' status as a purchaser of Automation's assets. Under *Knudsen Dairy, supra,* it is clear that Systems was the successor to Automation, having bought all the operating assets and work in progress of Automation. This liability in no way is affected by the bankruptcy court's holding that Century was not liable for the taxes.

Century enters the picture here by virtue of its indemnification agreement with Systems whereby Century agreed to hold Systems harmless from any claims advanced by the Board. This agreement was entered into as a result of Systems' reluctance to pay the second installment of the August 20, 1973, accord and satisfaction because of the Board's continued assertion of Systems' successor liability. At this point Systems had two liabilities. The first was its obligation to pay Century the second installment of the accord and satisfaction. Systems' payment of this obligation was in no way affected by the Board's Notice to Withhold since, by virtue of the August 16, 1973, stipulation Century posted a bond and the Board released its Notice to Withhold. The second obligation of Systems was its independent liability under the successor theory. Systems, apparently seeking to kill two debts with one payment, agreed with Century to pay Century the second installment in return for Century's promise to hold Systems harmless from any claims asserted by the Board. This post-bankruptcy voluntary assumption of an independent debt owed by Systems is not affected by Century's alleged independent liability that was disallowed by the bankruptcy court. The Board should have been allowed to proceed against Systems under the successor liabili-

ty. The fact that Century may ultimately have to pay any debt that Systems may owe arises solely by virtue of the post-bankruptcy indemnification agreement and, as a result, does not violate the bankruptcy injunction.

I would reverse the district court's finding that the Board was in contempt and limit the court's injunction so as to only restrain the Board from proceeding against Century by the Notice to Withhold served upon Systems.